[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
This matter is before the Court on the appeal of the plaintiff, Blue Cross Blue Shield of Rhode Island (Blue Cross), a nonprofit hospital service corporation from a decision of the defendant, Mark A. Pfeiffer, in his capacity as the Director of the Department of Business Regulation.
In March of 1988, Blue Cross filed for approval for a schedule of rates for some of its subscribers. A hearing officer was appointed, hearings held, and a recommendation made by the hearing officer to the Director, which recommendation was accepted and adopted by the Director. The decision which was issued on June 24, 1988 is the subject matter of this appeal.
Only that portion of the decision which applies to the subscription income for the Blue Cross Plan for the Direct Pay (Class DIR) is in controversy.
Class DIR consists of subscribers who contract directly with Blue Cross and are not members of employer groups, the latter groups are identified as Classes IER and PER.
Class DIR subscribers over the years have had increasingly higher rates than employer classes, and resulted in the healthier members in Class DIR leaving to obtain coverage in other health plans. The reserve deficit during the 1980's increased because of operating losses to over $20 million.
In the last three decisions prior to this one in controversy, the Department of Business Regulation imposed reductions of projected Incurred Claims Expense by 10% in 1984, 10% in 1985 and 5 percent in 1986, necessitating the "subsidization" of the losses by the other classes. As a result of the decision, Blue Cross stopped open enrollment of Class DIR, allowing only conversions from existing group subscribers. With this application, Blue Cross, in seeking to reopen enrollment, filed for an increase and submitted a new plan for Class DIR ("Pool II") directed at younger and healthier subscribers which would use health screening and age/gender rating to utilize lower rates for obtaining subscribers, with the desire that any gains from Pool II would benefit Pool I (the remainder of the Class). Pool II rates were approved by the Department.
In his June 24, 1988 decision, the Director accepted most of the projections of Blue Cross with reference to Pool I, including the Incurred Claims Expense but nevertheless he reduced such expense by 5% which was categorized by the plaintiff as a direct subsidy of Class DIR by the group classes. Plaintiff, Blue Cross has relied heavily on Blue Cross Blue Shield of Rhode Islandv. Caldarone 520 A.2d 969 (1987) hereinafter Caldarone and a subsequent decision, Blue Cross Blue Shield of Rhode Islandv. Pfeiffer, a Superior Court decision in October 1988 by Judge Israel that each line of business stand alone and that one line may not subsidize another in any of the components which constitute the establishment of rates.
This Court is, by statute, compelled to review the Director's decision pursuant to Rhode Island General Laws § 42-35-15(g) which states:
 42-35-15
 Section (g) of the statute reads as follows:
 (g) The Court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. . .
or as more succinctly stated by Judge Israel in his decision at page 12:
". . . it is not this court which must be persuaded, it is the Director. . . ."
Thus, on those issues which Blue Cross has appealed, this Court must review the record to ascertain whether or not the plaintiff has sustained its burden of justifying the increases it sought.
On Page 13, the Director's finding of fact #15 says in pertinent part:
"The indicated "Incurred Claims Expense" amounts . . . do not take account of the excess costs of conversion from group to direct pay. Neither do they account for the generation of excess funds that can be reasonably expected from Pool II . . ."
He then reduced the Incurred Claims Expense by 5%. The plaintiff has characterized this as a subsidy by the group plan for direct pay. Blue Cross has not indicated to this Court anything in the Caldarone or Israel decisions which show any basis for the Director to impose a reduction other than anarbitrary philosophical decision to favor Plan 65 subscribers over the remaining groups by denying to Blue Cross the portion of the increase intended for reserve-deficit recovery and contribution to reserve. In neither decision were facts alluded to which would justify the Director's result.
In this matter, there is evidence in the record to support the Director's decision to impose the reduction in the "Incurred Claims Expense". Ronald G. Harris, a consulting actuary with Milliman Robertson, Incorporated, presented by Blue Cross testified (tr. pages 86 through 88) that the computations did not take into account conversions by subscribers from group to direct pay and thus there was no charge back of claims by direct pay subscribers to the group plans. Raymond H. Baldeker, a Vice President of Blue Cross (tr. p. 138) stated that there was a charge back to the group category of only those claims within 30 days of the conversion.
Ronald J. Becker, the Attorney General's representative, relying on Exhibit 23, acknowledged that as much as 74% of the direct pay enrollees were from group conversion (tr. page 104).
Thus, you have controverted evidence on the issue of the impact of incurred claims expense as to conversions from group plans to direct pay and the Court cannot weigh that evidence but must accept the Director's findings and conclusions.
Likewise, the record is bereft of any evidence by the plaintiff which would negate the finding by the Director that excess funds from Pool II would be generated. The testimony elicited appears to point out that the rate structure for Pool II was intended to generate excess funds to lower the losses in Pool I, and the Director believed that not enough credit was given in the formulation of the rate request.
Herein, the Director has articulated a rational basis founded on evidence in the record for reducing the Incurred Claims Expense for the reasons stated. It is not for this Court to weigh that evidence.
The plaintiffs' complaint is denied and dismissed.